Floyd W. Bybee, #012651
**FLOYD W. BYBEE, PLLC**
2173 E. Warner Road, Suite 101
Tempe, Arizona 85284
Office: (480) 756-8822
Fax: (480) 756-8882
floyd@bybeelaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

|   |   |
|---|---|
| **Robert A. Scherbel,** an individual; | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| **Thunderbird Collection Specialists, Inc.,** an Arizona corporation; | |
| Defendant. | (Jury Trial Demanded) |

Plaintiff, Robert A. Scherbel, by and through counsel undersigned and in good faith, alleges as follows:

**I.   PRELIMINARY STATEMENT**

1. Plaintiff brings this action for damages based upon Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* (hereinafter "FDCPA"). In the course of attempting to collect a debt allegedly owed by

1  Plaintiff, Defendant engaged in deceptive, unfair
2  and / or abusive debt collection practices in
3  violation of the FDCPA.  Plaintiff accordingly
4  seeks to recover actual damages, and statutory
5  damages, as well as reasonable attorney's fees and
6  costs.

**II.   STATUTORY STRUCTURE OF FDCPA.**

2. Congress passed the FDCPA to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. FDCPA § 1692.

3. The FDCPA is designed to protect consumers who have been victimized by unscrupulous debt collectors regardless of whether a valid debt exists. <u>Baker v. G.C. Services Corp.</u>, 677 F.2d 775, 777 (9th Cir. 1982).

4. The FDCPA defines a "consumer" as any natural person obligated or allegedly obligated to pay any debt.  FDCPA § 1692a(3).

5. The FDCPA defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the

-2-

1 subject or the transaction are primarily for
2 personal, family, or household purposes. FDCPA §
3 1692a(5).
4 6. The FDCPA defines "debt collector' as any person
5 who uses any instrumentality of interstate
6 commerce or the mails in any business the
7 principal purpose of which is the collection of
8 any debts, or who regularly collects or attempts
9 to collect, directly or indirectly, debts owed or
10 due or asserted to be owed or due to another.
11 FDCPA § 1692a(6).
12 7. Any debt collector who fails to comply with the
13 provisions of the FDCPA is liable for any actual
14 damage sustained; statutory damages up to $1,000;
15 attorney's fees as determined by the Court and
16 costs of the action. FDCPA § 1692k.

**III.   JURISDICTION**

18 8. Jurisdiction of this Court, over this action and
19 the parties herein, arises under 15 U.S.C.
20 §1692k(d) (FDCPA), and 28 U.S.C. §1337.  Venue
21 lies in the Phoenix Division of the District of
22 Arizona as Plaintiff's claims arose from acts of
23 the Defendant perpetrated therein.

**IV.   PARTIES**

25 9. Plaintiff is a citizen of Maricopa County,
26 Arizona.

10. Plaintiff was allegedly obligated to pay a consumer debt and is a "consumer" as defined by FDCPA §1692a(3).

11. Defendant Thunderbird Collection Specialists, Inc. ("Thunderbird") is an Arizona corporation.

12. Thunderbird is licensed as a collection agency by the Arizona Department of Financial Institutions, license number 0005528.

13. Thunderbird regularly collects or attempts to collect debts owed or asserted to be owed or due another and is a "debt collector" as defined by FDCPA §1692a(6).

### V.   FACTUAL ALLEGATIONS

14. In or about June 2005, Plaintiff received dental services from Dr. Adriatik Rama.  Prior to receiving these dental services, and partly because of Plaintiff's limited income, Dr. Rama offered to provide these services for $180.00 plus the amount paid under Plaintiff's insurance plan. Plaintiff accepted Dr. Rama's offer, and immediately paid the $180.00.

15. In August 2005, Plaintiff received a bill from Dr. Rama showing a balance owing of $1,265.00.

16. Plaintiff immediately wrote Dr. Rama reminding him of his agreement to accept payment of $180.00 plus the insurance coverage, but never received a

1    response.
2  17. On or about September 14, 2005 Thunderbird sent
3      Plaintiff a collection letter demanding payment of
4      $1,265.00 on behalf of Dr. Rama.  (A copy of the
5      September 14, 2005 letter is attached hereto as
6      <u>Exhibit A</u>.)
7  18. Exhibit A was the first written communication
8      Thunderbird sent to Plaintiff concerning the
9      alleged debt owed to Dr. Rama.
10 19. Exhibit A states in part that "YOU ARE RUNNING
11     INTO TROUBLE BY AVOIDING THIS OBLIGATION."
12 20. Exhibit A further states: "SOMETIMES DRASTIC
13     ACTION IS TAKEN TO COLLECT AN ACCOUNT, ACTION
14     WHICH COULD HAVE BEEN AVOIDED WITH THE DEBTOR'S
15     COOPERATION" and "TO AVOID SUCH ACTION PLEASE PAY
16     THE ABOVE BALANCE."
17 21. Thunderbird sent Exhibit A to Plaintiff intending
18     to create a false sense of urgency.
19 22. On September 15, 2005, and prior to receiving
20     Exhibit A, Plaintiff received a collection call
21     from Thunderbird concerning the debt allegedly
22     owed Dr. Rama.
23 23. During this phone call, Thunderbird's collector
24     told Plaintiff that if he did not immediately pay
25     the debt, his checking account would be garnished.
26 24. Thunderbird's threat to garnish Plaintiff's

1     checking account was false.
2 25. A short time thereafter, Plaintiff received
3     Exhibit A.
4 26. Upon reading Exhibit A, Plaintiff believed that
5     his credit would also be ruined if he did not
6     immediately pay the debt, even though he knew he
7     did not owe it.
8 27. Therefore, after receiving the phone call
9     threatening garnishment of his checking account,
10     and receiving Exhibit A threatening to ruin his
11     credit, Plaintiff felt compelled to pay Dr. Rama
12     even though he clearly did not owe the debt.
13 28. On September 19, 2005, Plaintiff went to Dr.
14     Rama's office and paid him the $1,265.00 claimed
15     to be owed.
16 29. On October 3, 2005 Plaintiff filed suit in
17     Scottsdale Justice Court against Dr. Rama to get
18     his money back.
19 30. Dr. Rama was served with the Justice Court
20     complaint on October 5, 2005.
21 31. The next day, on October 6, 2005, Plaintiff
22     received another telephone call from Thunderbird
23     concerning collection of the alleged debt owed to
24     Dr. Rama.
25 32. During this call, Plaintiff explained that he had
26     already paid Dr. Rama the $1,265.00 in September,

1     and that he had just filed suit against the doctor
2     to get his money back.  The collector told
3     Plaintiff that Thunderbird would check with Dr.
4     Rama to verify whether the account had been paid,
5     and get back to him.
6  33. On October 6, 2005, Thunderbird sent Plaintiff a
7     second collection letter concerning the alleged
8     debt owed to Dr. Rama.  (A copy of this October 6,
9     2005 letter is attached hereto as Exhibit B.)
10 34. Exhibit B states that "PAST DUE ACCOUNTS ARE
11    REPORTED TO THE CREDIT BUREAU ONCE A MONTH" and
12    "IF PAYMENT IN FULL IS RECEIVED IN OUR OFFICE
13    WITHIN SEVEN (7) DAYS FROM THE DATE OF THIS
14    NOTICE, IT WILL BE REMOVED FROM YOUR REPORT."
15 35. Exhibit B also states "SEND THIS NOTICE ALONG WITH
16    YOUR PAYMENT TO INSURE PROMPT DELETION OF ALL
17    THUNDERBIRD COLLECTION ACCOUNTS."
18 36. Exhibit B contradicts and overshadows the
19    verification / validation notice contained in
20    Exhibit A giving Plaintiff 30 days after receipt
21    of Exhibit A to dispute the debt or any portion
22    thereof.
23 37. On October 10, 2005, Plaintiff called Thunderbird
24    to see if it's collector had contacted Dr. Rama's
25    office and verified that Plaintiff had paid the
26    $1,265.00.

-7-

38. The collector told Plaintiff that Thunderbird had contacted Dr. Rama's office, and that the account had not been paid.  Upon information and believe, this statement was false.
39. Plaintiff then faxed Thunderbird a copy of his statement from Dr. Rama's office showing that the alleged debt had in fact been paid.
40. Plaintiff called Thunderbird back after faxing over the statement.  The collector then stated that he had called Dr. Rama's office again, and with the statement had verified that the account had been paid in full.
41. Plaintiff called Thunderbird back again and asked whether it had reported the account to the credit bureaus as threatened in Exhibit B.  The collector assured Plaintiff that the account had not been reported and that it would not be reported because it had been paid.
42. As a result of Plaintiff suing Dr. Rama in Scottsdale Justice Court, Dr. Rama reimbursed Plaintiff the $1,265.00 that he had paid under Thunderbird's threat of garnishment of his checking account, and the ruining of his credit.
43. In or about December 2005, Plaintiff obtained a copy of his credit report from Trans Union, one of the three national credit bureaus.

44. The Trans Union report showed that Thunderbird had reported the Dr. Rama account as a collection account to Trans Union on November 17, 2005.
45. Upon information and belief, Thunderbird failed to notify Trans Union, when it reporting the Dr. Rama account, that Plaintiff disputed the alleged debt to Dr. Rama.
46. After receiving his credit report from Trans Union, Plaintiff telephoned Thunderbird and asked why it had reported the account to the credit bureau when its collector had previously told Plaintiff that the account would not be reported. Thunderbird's collector told Plaintiff that the account had been reported because Plaintiff had told Thunderbird that he would not pay it.
47. Thunderbird's collection also told Plaintiff Thunderbird had reported the account to all three of the major credit bureaus.
48. As a result and proximate cause of Defendant's actions, Plaintiff has suffered actual damages, including, but not limited to, emotional distress, humiliation, and embarrassment.
49. Defendant's actions were intentional, willful, and in gross or reckless disregard of the rights of Plaintiff and part of its persistent and routine practice of debt collection.

50. In the alternative, Defendant's actions were negligent.

## VI.   CAUSES OF ACTION

### a.   Fair Debt Collection Practices Act

51. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.
52. Defendant's violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f(1), and 1692g.
53. As a direct result and proximate cause of Defendant's violations of the FDCPA, Plaintiff has suffered actual damages for which Defendant is liable.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendant for:

a) Statutory damages of $1,000 pursuant to §1692k;

b) Actual damages in an amount to be determined at trial;

c) Costs and reasonable attorney's fees pursuant to §1692k; and

1    d)   Such other relief as may be just and proper.

3    DATED   March 16, 2006   .

4                                   **FLOYD W. BYBEE, PLLC**

6                                       s/ Floyd W. Bybee
                                    Floyd W. Bybee, #012651
7                                   2173 E. Warner Road, Suite 101
                                    Tempe, Arizona 85284
8                                   Office:  (480) 756-8822
                                    Fax: (480) 756-8882
9                                   floyd@bybeelaw.com

10                                  Attorney for Plaintiff

- 11 -